**EXHIBIT A**

FILED
2019 JAN 18 01:26 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 19-2-01930-1 KNT

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| MICAELA RENOJ PEREZ, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF TUKWILA, d/b/a TUKWILA POLICE DEPARTMENT, a local governmental entity; and BRENT FRANK, an individual, <br><br> Defendants. | No. <br><br> COMPLAINT FOR DAMAGES |

Plaintiff Micaela Renoj Perez, through her attorney Eric S. Nelson of Nelson Injury Law, PLLC, alleges as follows:

## I. JURISDICTION/PARTIES

1.1 At all times relevant, Plaintiff Renoj Perez was an individual residing in King County, Washington.

1.2 At all times relevant, Defendant City of Tukwila was a Washington municipality located in King County. The Tukwila Police Department is a department of the City of Tukwila.

1.3 At all times relevant, Defendant Brent Frank was a police officer with the Tukwila Police Department, an employee of the City of Tukwila, and was acting within the course

COMPLAINT FOR DAMAGES – 1

NELSON INJURY LAW, PLLC
1001 4TH AVENUE, STE. 4400
SEATTLE, WA 98154-1192
TEL: 206.812-8000/ FAX: 206.691-8731

and scope of his employment. All acts committed by Defendant Frank were done under color of the laws of the State of Washington and under the authority of his position as a police officer with the Tukwila Police Department.

1.4 The acts and omissions alleged herein occurred in King County, Washington.

## II. FACTS OF INCIDENT

2.1 On January 28, 2016 at approximately 10:55 pm, several Tukwila police officers, including Defendant Frank, responded to a possible domestic assault in Tukwila, Washington. The weather was overcast with a light breeze and 46 degrees out. It had recently rained, so the ground was wet. Defendant Frank, a K9 handler, was using K9 "Ace" on a 30 feet long leash to track the criminal suspect who had fled the scene on foot.

2.2 K9 Ace led Frank from the suspect's house at the 13800 block on 38th Ave S. through several backyards along 38th Ave S. Ace tracked east down the hillside along the west side of Tukwila International Boulevard (TIB). Ace and Frank then crossed TIB to the eastern sidewalk and continued north. While continuing northbound on TIB, Ace led them to a large concrete Jersey barrier that separated the highway from a steep drop-off into an expansive green belt to the east. Frank and Ace climbed over the blockade onto the hillside leading into the densely forested expanse. They followed a narrow, muddy footpath leading downwards along a retaining wall. At this time, Frank was informed via radio that the suspect may have run into a homeless camp in the woods to his east.

2.3 Frank and Ace continued down the path until reaching an offshoot that led down a steep slope. Frank shorted the leash from 30 feet to 10 feet to increase his control of Ace while going down the steep, wet, and muddy slope. Due to the thick foliage and harsh

NELSON INJURY LAW, PLLC
1001 4TH AVENUE, STE. 4400
SEATTLE, WA 98154-1192
TEL: 206.812-8000/ FAX: 206.691-8731

downward slope, Frank's visibility was limited to five to ten feet. They continued into the "forest."

2.4 Frank and Ace reached a small open area with a homeless camp that consisted of lean-to style constructed tents. Ace showed no interest around the tents.

2.5 Frank and Ace continued northeast through the forest. Frank heard some sounds about twenty feet to the north and led Ace in that direction.

2.6 Frank and Ace reached a stream about eight feet wide that was cascading nearly straight down a slippery rock face. The stream was fed by drainage off the above roadways and hillside and was flowing at a high/fast rate.

2.7 Ace dove into the water. Frank was holding onto Ace at the end of the 30-foot leash. Frank slid down the side of an embankment into the running water. He was submerged up to his hips. Ace swam downstream under fallen logs and through swamp-like landscape. Frank followed at the end of the 30-foot leash.

2.8 At approximately 12:27 am on January 29, 2016, while swimming downstream, Ace went around a corner of an embankment created by the stream, at which point Frank lost sight of Ace. After Ace was out of Frank's site, Frank heard screaming by a female and a male. When Frank caught up with Ace, he saw Ace biting a screaming female, Plaintiff Renoj Perez, around her right bicep area. Frank estimated that Ace had been biting her for five seconds.

2.9 Renoj Perez had two dog-bite punctures and a laceration to the top of her right bicep and three dog-bite punctures coinciding with the same area on her underarm. She also had lacerations and K-9 bite marks on the right side of her stomach.

2.10 Renoj Perez was an innocent bystander and not a suspect in the criminal search.

2.11 Renoj Perez had committed no crime.

2.12 Renoj Perez did not pose a threat to the officers.

2.13 Renoj Perez was not armed.

2.14 Renoj Perez was not actively attempting to flee from the police.

2.15 Renoj Perez did not provoke K9 Ace in any manner.

2.16 The use of force against Renoj Perez, an innocent bystander, was excessive, unreasonable, and unwarranted based on the circumstances.

2.17 It was foreseeable that serious injury to an innocent bystander could occur when: a) the K9 was kept on a 30-foot leash; b) the handler and K9 were "tracking" in a known homeless encampment where innocent bystanders reside; c) there was limited visibility in the area; d) the handler allowed the K9 out of his sight while waist deep in a stream; and e) the K9 and handler had already tracked for an hour-and-a-half through water, mud, homeless encampments, thick brush, and over highways.

2.18 Renoj Perez sustained serious and permanent injuries as a result of this incident.

### III. FACTS REGARDING HISTORY OF THE TUKWILA P.D.'S CUSTOM AND USAGE OF UNCONSTITUTIONAL POLICE PRACTICES

3.1 From at least 2009 through 2012, TPD K9s had bitten at least 31 people while on duty.

3.2 Upon information and belief, other TPD K9 dog bites have occurred after 2012.

3.3 Many of those K9 bites involved suspects alleged to have committed only misdemeanors. Some of those incidents involved innocent bystanders, similar to Renoj Perez's case.

3.4 In many instances, including Renoj Perez's case, the K9 was allowed to run free without a leash or run free on a 30-foot leash, which is like not have a leash at all, despite the dangerous propensities of the K9, the nature of the crime, whether the suspect was considered dangerous, or that the search was being conducted in an area with possible innocent bystanders such as a known homeless encampment.

3.5 In many instances, including in Renoj Perez's case, the K9 was out of the site of its handler, in violation of standard K9 handling procedures.

3.6 Many of the dog bite incidents resulted in serious injuries that required assistance by a medical professional.

3.6 On April 9, 2010, a TPD K9 bit his own handler.

3.7 On January 13, 2012, a TPD K9 bit a fellow police officer, King County Deputy Olmstead, on his left calf while assisting King County Police track a robbery suspect.

3.8 On July 13, 2012, a TPD K9 was placed on "administrative leave/suspension" "pending an overall review of K9 contacts from January 2012 till present."

3.9 On October 19, 2012, Tukwila Chief of Police Mike Villa officially directed that a TPD K9 be "retired." He specifically stated that:

> After an assessment of several recent deployments and suspect contacts, I am directing the retirement of K9 Gino from the Tukwila Police Department effective immediately.

3.10 The TPD K9 Team had fallen into a pattern of unconstitutional conduct in their encounters with suspects, arrestees, and others involved in law enforcement situations. This

occurred over a period of several years on a regular basis and continued up until the time of Ace's attack of Renoj Perez.

3.11 Over this time, Tukwila P.D., including the Chief of Police, Assistant Chief of Police and other police policymakers, knew or should have known that this inappropriate and unconstitutional conduct was occurring.

3.12 Tukwila P.D. acquiescence in this pattern of conduct amounted to a practice or custom which constituted the standard operating procedure of the Tukwila P.D.

3.13 Tukwila P.D. ratified Officer Frank and K9 Ace's unconstitutional use of excessive force when it failed to adequately train, supervise, or discipline them for their conduct.

3.14 Tukwila P.D. had a policy or custom of deliberate indifference in the supervision of its officers' use of force thereby causing the constitutional deprivation experienced by Renoj Perez.

3.15 The conduct was so widespread and prevalent that a full review and investigation of the K9 and its handler was undertaken in June of 2013. Despite this full review, no additional training, supervision or discipline was undertaken by the Tukwila P.D.

3.16 Tukwila P.D. had actual or constructive notice that the K9 Team was inadequately trained for field duties, including when searching for and apprehending suspects.

3.17 Tukwila P.D. had actual or constructive notice that the K9 Team was using unreasonable and excessive force over a time period of four-plus years that resulted in the violation of constitutional rights of suspects and others.

NELSON INJURY LAW, PLLC
1001 4TH AVENUE, STE. 4400
SEATTLE, WA 98154-1192
TEL: 206.812-8000/ FAX: 206.691-8731

3.18 Despite this knowledge, Tukwila P.D. failed to adequately prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty.

3.19 The failure to train or supervise its K9 Team and the failure to adequately prohibit and discourage this conduct directly caused the damages inflicted upon Renoj Perez.

3.20 The Tukwila P.D. made a deliberate choice to follow a course of action made from various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

## IV. EXCESSIVE FORCE CLAIM (42 U.S.C. § 1983)

4.1 As a result of the allegations contained herein, Defendants are liable to Renoj Perez under 42 U.S.C. § 1983 for violating Renoj Perez's constitutional rights by subjecting her to excessive and unreasonable force.

## V. MONELL CLAIM AGAINST DEFENDANT TUKWILA POLICE DEPARTMENT FOR DEFICIENT TRAINING & SUPERVISION (42 U.S.C. § 1983)

5.1 As a result of the allegations contained herein, Defendant Tukwila Police Department is liable to Renoj Perez under 42 U.S.C. § 1983 for failing to adequately train and supervise its police officers, including the K9 Team, which caused the violation of Renoj Perez's constitutional rights by subjecting her to excessive and unreasonable force.

## VI. MONELL CLAIM AGAINST DEFENDANT TUKWILA POLICE DEPARTMENT FOR CONDONING THE CUSTOM AND USAGE OF UNCONSTITUTIONAL POLICE PRACTICES (42 U.S.C. § 1983)

6.1 As a result of the allegations contained herein, Defendant Tukwila Police Department is liable to Renoj Perez under 42 U.S.C. § 1983 for failure of its policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers,

COMPLAINT FOR DAMAGES – 7

NELSON INJURY LAW, PLLC
1001 4TH AVENUE, STE. 4400
SEATTLE, WA 98154-1192
TEL: 206.812-8000/ FAX: 206.691-8731

including the K9 Team, which caused the violation of Renoj Perez's constitutional rights by subjecting her to excessive and unreasonable force.

## VII. STATE COURT CLAIMS AGAINST FRANK

7.1 As a result of the allegations contained herein, Defendant Frank is liable to Renoj Perez for common law torts under Washington law, including assault, battery, and negligence.

## VIII. STATE COURT CLAIMS OF NEGLIGENT SUPERVISION, TRAINING, HIRING AND/OR RETENTION AGAINST TUKWILA P.D.

8.1 As a result of the allegations herein, Perez Renoj asserts a Washington State law claim against Defendant Tukwila Police Department for the negligent training, supervision, hiring and/or retention of Officer Frank and K9 Ace.

8.2 Defendant Tukwila Police Department's negligence was a direct and proximate cause of Plaintiff's injuries and damages.

## IX. DEFENDANT CITY OF TUKWILA POLICE DEPARTMENT IS VICARIOUSLY LIABLE FOR THE ACTIONS OF ITS OFFICERS UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR

9.1 Officer Frank was a police officer employed by the City of Tukwila Police Department. Officer Frank was acting within the scope or course of his employment at the time of this incident. Under the doctrine of *respondeat superior*, the City of Tukwila is liable under state law for the acts of Officer Frank.

## X. TORT CLAIM NOTICE

10.1 On February 12, 2016, Plaintiff served a "Claim for Damages" notice on the City of Tukwila pursuant to RCW 4.96.020. Over 60 days has passed since the filing the notice, which allows Plaintiff to file this action.

## XI. RELIEF SOUGHT

11.1 Plaintiff requests an award of the following damages in amounts to be proven at trial: a) for Plaintiff's general damages including past and future pain and suffering and loss of enjoyment of life; b) for Plaintiff's special damages including past and future medical expenses, and wage loss and loss of earning capacity; c) reasonable attorney's fees, costs, and prejudgment interest incurred in pursuing this action as provided for in 42 U.S.C. § 1988; and d) for such other and further relief as the court deems just and equitable.

DATED this 18th day of January, 2019.

NELSON INJURY LAW, PLLC

_____
Eric S. Nelson WSBA #22065

COMPLAINT FOR DAMAGES – 9

NELSON INJURY LAW, PLLC
1001 4TH AVENUE, STE. 4400
SEATTLE, WA 98154-1192
TEL: 206.812-8000/ FAX: 206.691-8731